UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF on behalf of itself and its members, REBECCA ALEXANDER, JAZMINE JONES, AMBER MARTIN, JAMES MUNRO, and MEI NISHIMOTO;<br><br>Plaintiffs,<br><br>v.<br><br>SIRIUSXM HOLDINGS INC, STITCHER MEDIA INC., and PANDORA MEDIA LLC,<br><br>Defendant. | CIVIL ACTION NO.  1:21-cv-10542<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## **INTRODUCTION**

1.      SiriusXM Holdings Inc. ("SiriusXM"), Stitcher Media Inc. ("Stitcher"), and

Pandora Media LLC. ("Pandora"), (collectively "Defendants") each operate an extensive

podcast streaming service that offers users information on a wide range of subjects, including

current events, entertainment, science, history, and politics, and provide audiences original

content available only in the podcast medium. However, Defendants fail to provide transcripts

for the vast majority of their podcast content, despite the fact that it is relatively simple to do

so, particularly given that much of the work to produce transcripts can be automated,[1] and

despite requests from the deaf and hard of-hearing community for access to their

programming. Defendants' failures to provide transcripts of their podcasts excludes deaf and

hard-of-hearing

_____

[1]Automatic speech recognition ("ASR") technology enables the recognition and translation of spoken language into text by computer. Transcripts then require a minimally burdensome human cleanup to ensure accuracy and labeling of speakers.

persons from the critical sources of news, entertainment, educational programs, and popular culture that Defendants make available to their hearing customers, in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

2.      Defendant SiriusXM bills itself as the "new destination for original, exclusive, and popular podcasts,"[2] providing customers access to a slate of both original and third-party podcast content on its website and mobile application. This content includes exclusive interviews with celebrities like Kevin Hart in the SiriusXM original podcast *Comedy Gold Minds* and scripted entertainment series, including the star-studded, SiriusXM original series *Marvel Wastelanders Old Man Star-Lord*. SiriusXM has invested heavily in podcasts in the last several years, acquiring Pandora in 2018 and Stitcher in 2020.

3.      Similarly, Defendant Stitcher, a media company exclusively focused on producing and streaming podcasts, asserts that it is "the best place for podcasts."[3]  It is home to one of the largest podcast listening applications, providing users access to the hundreds of thousands of podcasts in its library, including hundreds of original shows, which it often provides exclusive access to on its mobile application. This includes Stitcher-produced content such as Peabody award nominee *Unfinished: Deep South*, a podcast that investigates the unsolved murder of Isadore Banks, one of the wealthiest African-Americans on the Arkansas Delta; *Time For My Stories* which examines the arc of the United States through the lens of the TV drama; and *Hollywood Masterclass*, a series which explores the human psyche. Stitcher

---

[2] *SiriusXM is the New Destination for Original, Exclusive, and Popular Podcasts*, SiriusXM, 1 (2020), https://s1.q4cdn.com/750174072/files/doc_news/SiriusXM-is-the-New-Destination-for-Original-Exclusive-and-Popular-Podcasts-2020.pdf.

[3] *About Us*, Stitcher, https://www.stitcher.com/about (last visited Dec. 7, 2021).

ranked #1 in Triton Digital's Report of top Podcast Networks for August 2021, with 451 active original podcasts, 31 million average weekly downloads and 9.6 million weekly users. Stitcher reported a revenue of $73 million in 2019 (up 42% over the previous year).

4.     Likewise, Defendant Pandora, a popular audio streaming service which boasted 55.9 million monthly active users as of 2021, launched its podcast program in 2018 and has quickly seen its "rich catalog of podcasts [] increased over 5x to now boast thousands of shows and over 600,000 episodes across a broad range of genres."[4] Pandora's library features an extensive assortment of original SiriusXM and Stitcher podcasts such as SiriusXM's *Andy Cohen's Deep & Shallow Interviews*, in which Andy Cohen has one-on-one conversations with some of the world's biggest stars, SiriusXM's *Joel Osteen*, in which pastors Joel and Victoria Osteen share their daily message of inspiration for an empowered and spirit-filled life; and *My Favorite Murder*, a Stitcher original true-crime, comedy podcast that was ranked second on Forbes's 2019 list of highest-earning podcasters.

5.     In addition to their original and exclusive content, all Defendants also provide access to third-party content, including investigative, true-crime series like the Peabody award-winning, smash hit *Serial,* which has seen over 250 million downloads since its 2014 debut; self-help information, like *The Ramsey Show*, which provides advice on finance and, occasionally, money-related Christian philosophy; and timely explorations of race and identity like the NPR Podcast *Code Switch*, which saw a 270% surge in downloads in the summer of 2020 following the wave of protests against police brutality triggered by the murders of George Floyd and Breonna Taylor.

---

[4] *Podcasts on Pandora Now Available on the Web and Pandora's Desktop App*, Pandora: Pandora Blog (Nov. 12, 2019) https://blog.pandora.com/us/podcasts-on-pandora-now-available-on-the-web-and-pandoras-desktop-app/.

6.      By combining exclusive content, original content, and third-party content, Defendants provide their hearing customers a one-stop shop for exploring, discovering, downloading, subscribing, and managing most or all of the podcasts they will consume.

7.      Yet, Defendants exclude deaf and hard-of-hearing individuals from enjoying and learning from these same programs. Defendants' failure to provide transcripts for nearly all of the original and third-party podcast content available through each of their podcast streaming services, even when transcripts are available from third-party podcast producers, denies deaf and hard-of-hearing persons access to the benefits Defendants offer their hearing users. Indeed, Defendants' failures clearly ignore the mandates of the ADA, which requires companies that provide their services to the general public to provide these services in a manner that is accessible to people with disabilities.

8.      Plaintiffs National Association of the Deaf ("NAD"), Rebecca Alexander, Jazmine Jones, Dr. Amber Martin, James Munro, and Mei Nishimoto (collectively "Named Plaintiffs"), consist of an organization that advocates by and on behalf of the deaf and hard-of-hearing and five deaf working professionals who wish to utilize podcasts in their personal and professional lives but are unable to do so because of Defendants' failures to make their  podcasts accessible to them. This failure harms all Plaintiffs, along with approximately 48 million Americans who are deaf or hard of hearing, by denying them the benefits of Defendants' programming, which affects their professional development, their ability to educate themselves on topics both professionally and personally, and even impacts their parenting. Defendants'

refusals to provide transcripts[5] for the podcasts available on their podcast streaming services thus denies Plaintiffs the full and equal enjoyment of the content Defendants offer their hearing users.

9.      Plaintiffs attempted to resolve this matter without a lawsuit but were unable to obtain sufficient commitments from Defendants to remedy these barriers to full and equal access.

10.      The Named Plaintiffs now bring this lawsuit to end the ongoing civil rights violations Defendants commit against deaf and hard-of-hearing persons in New York and throughout the United States.

## JURISDICTION AND VENUE

11.      This is an action for declaratory and injunctive relief and compensatory damages, where applicable, brought pursuant to Title III of the ADA, 42 U.S.C. § 12181 et seq. ("Title III"), the  New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law, Article 15 (Executive Law § 290 et seq.), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. The Court has power to issue such relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA.

13.      The Court has subject matter jurisdiction over the action over the NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

---

[5] All or nearly all podcasts currently available in Defendants' podcast libraries contain no visual elements. To the extent Defendants currently offer, or begin to offer, podcasts with a video element, Plaintiffs also demand closed captioning that displays synchronously with the video.

14.     Following the commencement of this action, a copy of this Complaint will be served both on the New York City Commission for Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur within this district.  SiriusXM, Stitcher, and Pandora each operates its internet-based, audio and streaming business in this District, and each Defendant has sufficient contacts to be subject to personal jurisdiction in this District.  A substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District. Plaintiffs Martin and Alexander live and work in the district.

## PARTIES

16.     Plaintiff NAD is the nation's premier civil rights organization of, by, and for deaf and hard-of-hearing individuals. The NAD is organized as a non-profit corporation under the laws of the State of Maryland and has its national headquarters in Silver Spring, Maryland. The NAD's membership includes individuals and associations from all fifty states and Washington, D.C. The NAD is also the United States member of the World Federation of the Deaf, which comprises more than 120 national associations of deaf people.

17.     Plaintiff Rebecca Alexander resides in New York City, New York and is deaf. Ms. Alexander has not registered for or purchased an account with any Defendant because she is aware that virtually none of their podcasts are accessible, but she would do so if Defendants provided transcripts for their podcast content.

18.     Plaintiff Jazmine Jones resides in Buffalo, New York and is deaf. Ms. Jones has not registered for or purchased an account with any Defendant because she is aware that virtually

none of their podcasts are accessible, but she would do so if Defendants provided transcripts for their podcast content.

19.     Plaintiff Dr. Amber Martin resides in Pleasantville, New York and is deaf. Ms. Martin has not registered for or purchased an account with any Defendant because she is aware that virtually none of their podcasts are accessible, but she would do so if Defendants provided transcripts for their podcast content.

20.     Plaintiff James Munro resides in Macedon, New York and is deaf. Mr. Munro has not registered for or purchased an account with any Defendant because he is aware that virtually none of their podcasts are accessible, but he would do so if Defendants provided transcripts for their podcast content.

21.     Plaintiff Mei Nishimoto resides in Seattle, Washington and is deaf. Ms. Nishimoto has not registered for or purchased an account with any Defendant because she is aware that virtually none of their podcasts are accessible, but she would do so if Defendants provided transcripts for their podcast content.

22.     Defendant SiriusXM has its collective United States headquarters in New York, New York. It operates a podcast streaming service that customers can access through its website (https://www.siriusxm.com/) or through a mobile application.

23.     Defendant Stitcher has its headquarters in New York, New York. It is a media company that specializes in the creation, distribution, and monetization of podcasts that also allows users to access music, radio shows, and podcasts through its website (https://www.stitcher.com/) or thorough a mobile application.

24.     Defendant Pandora has its U.S. headquarters in Oakland, California and has its second largest office in New York City. It operates a podcast streaming service that customers can access through its website (https://www.pandora.com/) or through a mobile application.

## **FACTUAL ALLEGATIONS**

I.     **Defendants Each Provide Podcast Streaming Services to Hearing Individuals but Exclude Deaf and Hard-of-Hearing Individuals.**

25.     Podcasts are a rapidly growing form of media that offer consumers access to on-demand content on a variety of subjects, including news, entertainment, science, history, and politics.

26.     The primary format of most podcasts is an audio recording of spoken words and related audio, which is not available in any visual way.

27.     Consumers typically access podcasts through third-party applications, like Defendants', which allow them to subscribe and listen to podcasts, as well as download them for offline use.

28.     Each Defendant operates a podcast streaming service that grants their customers access to a large library of podcast content. Users can stream this content on demand in a variety of ways including through: Defendants' websites, Defendants' mobile applications, smart TVs, Amazon Alexa devices, Apple TV, Sony PlayStation, Roku, or Sonos speakers. For many podcasts, customers can also download them to listen to offline at a later time. Defendants' mobile applications all provide their users access to thousands of hours of on-demand podcast content.

29.     Some third-party podcast creators independently provide transcripts of their podcasts which they make available on their third-party websites. Yet none of the Defendants

provide these transcripts on their podcast streaming service, either on their websites or mobile applications. This means that deaf and hard-of-hearing users cannot access those transcripts on Defendants' podcast streaming service and must instead locate the transcripts on the third party's own website, creating considerable additional work over the easy and integrated user experience that nondisabled users of Defendants' platforms enjoy.

30.     Just as Defendants do not provide transcripts for their own original podcasts, none of the Defendants provide transcripts for third-party-created podcasts that do not provide their own transcripts elsewhere. Because Defendants also do not provide transcripts for these podcasts, deaf and hard-of-hearing individuals users have no way to engage with this content and are completely denied access to content made available to Defendants' users.

### a. *Sirius XM*

31.     Defendant SiriusXM describes itself as "the leading audio entertainment company in North America" and the "home of exclusive and popular podcasts including many original series and a highly-curated selection of podcasts from leading creators and providers."[6]

32.     To access SiriusXM's podcasts, users must create a SiriusXM account and purchase a subscription. The most basic package available offers customers access to the SiriusXM app for $10.99 a month. Users who purchase this basic package have full access to all the podcasts in SiriusXM's library.  Users who purchase an account may also utilize SiriusXM's mobile application for engaging with SiriusXM's podcasts.

33.     SiriusXM has invested heavily in podcasts in the last several years.

---

[6] *Corporate Information: About Sirius XM*, SiriusXM, https://www.siriusxm.com/corporate?intcmp=FullFooter_NA_www:Home_AboutSiriusXM (last visited Dec. 7, 2021).

34.     Between 2018 and 2020 SiriusXM paid over 3.5 billion dollars to acquire several major podcast providers. In 2018, SiriusXM paid $3.5 billion to acquire Pandora.

35.     In 2020 SiriusXM paid $325 million to acquire Stitcher.

36.     In June 2020, SiriusXM further expanded into the podcast business by acquiring Simplecast, a leading podcast management platform that enables podcast creators to publish, manage, and measure their content. SiriusXM combined the power of Simplecast with another company it acquired, AdsWizz, to offer a full suite of monetization options for podcast creators.

37.     In addition to hosting a vast library of podcasts from third-party creators, SiriusXM's podcast streaming service offers exclusive content not available on other podcast applications outside of SiriusXM and its subsidiaries. This includes content such as: *I Want My 80s Podcast*, in which MTV VJs flash back to discuss and give personal insights into the defining moments of the 80s; *Top of the World: Lessons from Rebuilding the World Trade Center*, an 11-part series featuring individuals at the heart of the effort to rebuild the World Trade Center; and *Podversaries*, a series that tells the stories behind rivalries in sports history.

38.     SiriusXM's vast podcast library also includes:

- Dozens of original podcasts created and produced by SiriusXM. Several of those original podcasts are the result of a 2019 multiyear deal between SiriusXM and Marvel Entertainment, in which Marvel agreed to produce a substantial number of both scripted and unscripted podcasts - many of which debut exclusively on SiriusXM for several months before they are available to listeners on other podcast platforms. Another original SiriusXM podcast is *Book Club with Michael Smerconish*, which covers

interviews with Michael Smerconish, whose mission is to create a

clearinghouse for non-ideological thinking;

- Over 60 podcasts from its subsidiary Stitcher's catalog of original and

    Stitcher produced podcast content including popular shows such as *Science*

    *Rules! With Bill Nye*, *Office Ladies*, and *Getting Curious With Jonathan*

    *Van Ness*;

- Some of the most popular third-party podcast content available such as *This*

    *American Life*, *Revisionist History*, *The Moth*, *RadioLab*, *The Bible in a*

    *Year*, and dozens more.

- Content compiled from its radio services, such as *VOLUME Interviews*.

39.     SiriusXM's podcast streaming service also offers its users an array of unique

services including:

- A "Recommended For You" section which provides recommendations of

    additional podcasts to listen to based on listening history;

- Curated lists to help customers find podcast content that might be of

    interest. These categories include "For Kids," "Road Trip Listens,"

    "Taking Care of Yourself," and more.

40.     SiriusXM does not provide transcripts for any of the podcasts available on its

podcast streaming service.

### b.  *Stitcher*

41.     Defendant Stitcher is the top podcast publisher in the US, as measured by Triton

Digital.  It currently produces seventeen of the Top 100 Podcasts in the United States by Average

Weekly Downloads, including *True Crime Garage*, *Small Town Murder*, and *StarTalk Radio*.

42.     Individuals may stream much of Stitcher's content directly by going to its website. Users may also utilize Stitcher's mobile application for engaging with Stitcher's podcasts. To utilize Stitcher's mobile application, users must create a Stitcher account. Users also have the option of purchasing a subscription with Stitcher for $4.99 a month or $34.99 a year. A premium subscription provides customers access to special benefits including over 60,000 hours of premium podcasts, ad-free listening, early access to certain podcasts, and other exclusive perks such as monthly giveaways and bonus episodes of certain Stitcher podcasts.

43.     Stitcher's vast podcast library includes:

- Over 50 Stitcher original podcast shows, created and produced by Stitcher, such as the James Beard Award Winner, *The Sporkful*.

- A slate of over 500 shows produced by Stitcher, with over 50 podcasts from the comedy podcasting network Earwolf, including its flagship show *Comedy Bang! Bang!.* Other popular Stitcher-produced content includes *Freakenomics Radio*, *Juicy Scoop with Heather McDonald*, and *Scared to Death*.

- A broad array of popular third-party podcast content such as *This American Life*, *Revisionist History*, *The Moth*, *The Ben Shapiro Show, RadioLab*, and hundreds more.

44.     Stitcher's podcast streaming service also offers its users an array of unique services including:

- A variety of playback controls that allow users to control the play speed and rewind timing of each podcast episode;

- Advanced episode search, filtering, and sorting to help users find podcasts and "Up Next" queue to keep track of podcasts they may be interested in;

- The ability to organize your podcasts into custom playlists.

45.     While a small minority of Stitcher-produced podcasts independently provide transcripts for their podcasts on their third-party websites, Stitcher does not provide transcripts for any of the Stitcher original podcasts or third-party podcasts available on its podcast streaming service and does not integrate any transcripts onto its website or mobile application.

*c.  Pandora*

46.     Defendant Pandora is one of the leading platforms enabling users to discover new music and podcasts. Powered by the Genome Project, Pandora provides automated recommendations which allows users to find new music and podcasts based on their tastes.

47.     With its podcast launch in 2018, Pandora aimed to solve the question of "'What podcast should I listen to?'. . . [by] effortlessly serv[ing] up highly personalized podcast recommendations that are completely unique to [users'] tastes."[7]

48.     Pandora has rapidly become a premier podcast destination, ranking as the fourth most common podcast platform according to a 2020 study.

49.     Individuals may stream much of Pandora's podcast content directly by going to its website and registering for a free Pandora account. Users may also utilize Pandora's mobile application for engaging with Pandora's podcasts. Users also have the option of purchasing a

---

[7] *Introducing Podcasts on Pandora*, Pandora: Pandora Blog (Dec. 6, 2018)
https://blog.pandora.com/us/introducing-podcasts-on-pandora/

"Pandora Plus" account for $4.99 a month, which provides the benefit of offline listening, or a "Pandora Premium" account for $9.99 a month, which provides the benefit of unlimited offline listening and the ability to make and share playlists.

50.     Pandora's vast podcast library includes:

- Exclusive[8] access to 129 SiriusXM produced podcasts, such as *Wu-Tang: The Saga Continues*, an original podcast that accompanies the Hulu original series, and *NFL's 100 Greatest*, a 20-part podcast series from SiriusXM and NFL Films counting down the greatest NFL memories of all time;

- Access to the full array of Stitcher produced podcasts, including *Literally! with Rob Lowe*, in which Rob Lowe interviews guests from the world of movies, TV, sports, music, and culture for fun, wide-ranging, free-wheeling conversations;

- A broad array of popular third-party podcast content such as *Dateline NBC, The Bellas Podcast, The Daily, Stuff You Should Know,* and *Pod Save America.*

51.     Pandora's podcast streaming service also offers its users an array of unique services including:

- Podcast Genome Project which recommends podcasts to users by evaluating content based on a variety of attributes spanning

---

[8] Exclusive content meant content that is available to the entire SiriusXM/Stitcher/Pandora corporate family.

content categories, as well as users' signals including thumbs,

skips, collects, and plays;

- The ability to "thumbs up" or "thumbs down" a podcast

  episode, which then allows Pandora to personalize its future

  recommendations to the user accordingly;

- The ability to enjoy all Pandora podcasts on Alexa-enabled

  devices including Amazon Echo, Echo Dot, and Echo Show by

  using simple voice commands.

52.     Pandora does not provide transcripts for any of the podcasts available on its

podcast streaming service.

## II.     Plaintiffs' Allegations

### a.   *NAD*

53.     The NAD's mission is to preserve, protect and promote the civil, human and

linguistic rights of deaf and hard-of-hearing people in the United States of America. This mission

includes ensuring that important tools of daily life – such as websites and applications conveying

useful and educational information to the general public – are accessible to deaf and hard-of-

hearing people.

54.     The NAD furthers this mission in a variety of ways. For example, the NAD

provides guidance about effective captioning on its website and administers the Described and

Captioned Media Program ("DCMP") through a cooperative agreement with the U.S.

Department of Education. The DCMP promotes equal access to communication and learning

through described and captioned educational media. The DCMP provides services designed to

support and improve the academic achievement of students who are blind, low-vision, deaf,

hard-of-hearing, or DeafBlind. The DCMP has a library of more than 4,000 titles of described

and captioned educational media available for loan to teachers, parents, and students who are

deaf, hard of hearing, blind, low-vision, or DeafBlind.

55.     Additionally, the NAD works for passage of legislation guaranteeing equal access

and effective communication for individuals who are deaf and hard-of-hearing. For example, the

NAD has been instrumental in the passage of the Twenty-First Century Communications and

Video Accessibility Act of 2010 ("CVAA"), P.L. No. 111-260.

56.     The NAD also devotes resources to educating its members and members of the

public regarding their right to access educational programs through informative videos in

American Sign Language, sharing advocacy letters through its social media postings and on its

websites, and publishing position papers on its website.

57.     The NAD has standing to sue as an association on behalf of its deaf and hard-of-

hearing members, as Defendants' unlawful conduct interferes with the rights of NAD members

to have full and equal access to all aspects of society. As described further below, NAD members

Jazmine Jones, Dr. Amber Martin, and James Munro have standing to sue as individuals because

they are injured by Defendants' failure to provide access via ensuring transcripts of their

podcasts. These NAD members would subscribe to Defendants' platforms if the podcasts had

captioning or transcripts available for them to access. The NAD advocates on behalf of these

members and all other members, which is the essence of the NAD's mission of preserving,

protecting, and promoting the civil, human, and linguistic rights of all deaf and hard-of-hearing

people in the United States. The NAD pursues this action as an organizational plaintiff on behalf

of its members other than those named here to pursue declaratory and injunctive relief and not

individualized remedies, so those other unnamed members are not required to participate in this

action. The NAD has received complaints about the inaccessibility of podcasts from its members as well as other deaf and hard-of-hearing individuals from all over the country.

### b. *Rebecca Alexander*

58.    Plaintiff Rebecca Alexander is a psychotherapist and author who lives in New York City, New York. Ms. Alexander is deaf.

59.    Ms. Alexander has Usher syndrome type III and has been progressively losing her hearing since she was a teenager. She once enjoyed utilizing a variety of podcasts but stopped when listening without transcripts became too difficult.

60.    Ms. Alexander's profession requires her to rely significantly on her residual hearing for psychotherapy sessions, resulting in auditory fatigue.[9] As a result, her leisure activities involve reading as opposed to listening.

61.    Ms. Alexander's clients recommend podcasts that Ms. Alexander would like to engage with, but she is deterred from seeking them out because of accessibility barriers. Ms. Alexander would like to access these and other podcasts relevant to her professional development, such as podcasts about mental health and meditation.

62.    Ms. Alexander is also interested in accessing comedy and news podcasts.

63.    Ms. Alexander requires transcripts to fully access podcast material as she relies on reading transcripts while simultaneously listening to completely comprehend the podcast material.

---

[9] The American Academy of Audiology describes listening fatigue as fatigue caused by the increase in cognitive resources those with hearing loss require to listen to speech. In order to compensate for the hearing loss, the brain has to work harder than before to process the same information, causing stress on the brain and fatigue that nondisabled individuals do not experience. https://www.audiology.org/consumers-and-patients/hearing-and-balance/fatigue/.

64.     Ms. Alexander would like to use Defendants' podcast streaming services to engage with podcasts on these and other topics but has not registered for an account or purchased a subscription with any Defendant because she knows they do not provide transcripts for their podcasts. Ms. Alexander is particularly interested in accessing the SiriusXM original podcasts *Vital Signs* and *Signal Boost* and the Stitcher produced podcasts *Imani State of Mind* and *The Psychology Podcast* but no Defendant makes transcripts for these or any other podcast available on its streaming service. Without transcripts, Ms. Alexander does not have full and equal access to Defendants' podcast-streaming offerings. Ms. Alexander would use each of Defendants' podcast streaming services if they provided transcripts for their podcast content. Ms. Alexander would like to manage all her podcasts in as few platforms as possible, as hearing listeners do, but Defendants' failure to include even existing third-party transcripts in their services makes this impossible.

### c.  *Jazmine Jones*

65.     Plaintiff Jazmine Jones is the Program Director of an educational program utilizing videos in ASL for a nonprofit organization, Communication Services for the Deaf. Ms. Jones has also worked as a social media content manager. Ms. Jones lives in Buffalo, New York, is deaf, and is a member of the NAD.

66.     Ms. Jones is very involved in social media and is constantly engaging with others through various social media outlets. Ms. Jones relies on keeping up with the latest in media programming and social media usage, and enjoys learning and acquiring new skills from a variety of platforms. Ms. Jones has long wanted to access podcasts on various topics such as personal finance, gardening, astrology, end of life, and spirituality through captioning and transcripts.

67.     Ms. Jones would like to use Defendants' podcast streaming services to engage with podcasts on these and other topics but has not registered for an account or purchased a subscription with any Defendant because she knows they do not provide transcripts for their podcasts. Ms. Jones is particularly interested in accessing the SiriusXM original podcast *All Music is Black Music* and the Stitcher original podcast *Levar Burton Reads*, the Stitcher produced podcast *Seizing Freedom* and the podcast *Lil Rel - I Know You Hear Me, But Are You Listening?*, but no Defendant makes transcripts for these or any other podcast available on its streaming service. Without transcripts, Ms. Jones does not have full and equal access to Defendants' podcast-streaming offerings. Ms. Jones would use each of Defendants' podcast streaming services if they provided transcripts for their podcast content. Ms. Jones would like to manage all her podcasts in as few platforms as possible, as hearing listeners do, but Defendants' failure to include even existing third-party transcripts in their services makes this impossible.

### d.  *Amber Martin*

68.     Plaintiff Dr. Amber Martin teaches Developmental Psychology as a Lecturer Doctoral at Hunter College in New York City, New York. Dr. Martin is deaf and a member of the NAD.

69.     As an academic professor of psychology at a highly regarded college, Dr. Martin is constantly reviewing and learning new information relevant to her field and other fields such as general science and anything relating to nature. She is also interested in linguistics. Dr. Martin has long wanted to access podcasts on these and other topics through captioning and transcripts. Dr. Martin would also like to include podcasts in her curriculum but has been deterred from doing so because transcripts are not readily available.

70.     Dr. Martin would like to use Defendants' podcast streaming services to engage with podcasts on these and other topics but has not registered for an account or purchased a subscription with any Defendant because she knows they do not provide transcripts for their podcasts. Dr. Martin is particularly interested in accessing the SiriusXM original podcasts *Vital Signs* and *Coronavirus: Everything You Need to Know* and the Stitcher produced podcasts *Atlas Obscura* and *Science Rules! with Bill Nye* but no Defendant makes transcripts for these or any other podcast available on its streaming service.

71.     Without transcripts, Dr. Martin does not have full and equal access to Defendants' podcast-streaming offerings.

72.     Dr. Martin would use each of Defendants' podcast streaming services if they provided transcripts for their podcast content.

73.     Dr. Martin has enjoyed reading the transcripts from podcasts of *RadioLab*. She is also interested in accessing the podcast *This American Life*.

74.     Although *RadioLab* and *This American Life* independently provides transcripts for many of their podcasts, their transcripts are not available with Defendants' podcast streaming services so customers cannot use Defendants' platform to read those transcripts. Dr. Martin would like to manage all her podcasts in as few platforms as possible, as hearing listeners do, but Defendants' failure to include even existing third-party transcripts in their services makes this impossible.

e.  *James Munro*

75.     Plaintiff James Munro is the Associate Director for Admissions and Data for the National Technical Institute of the Deaf, a college within the Rochester Institute of Technology. Mr. Munro is deaf and a member of the NAD.

76.     As a tech professional within a highly regarded technological university, Mr. Munro is constantly reviewing and learning new information relevant to his field and other fields such as politics, geography, history, and many other topics. Mr. Munro has long wanted to access podcasts on these and other topics through transcripts.

77.     Mr. Munro has enjoyed reading the transcripts from podcasts of Malcolm Gladwell's *Revisionist History*[10] as well as *Freakonomics*.

78.     Although there are independently available transcripts for many of the episodes of *Revisionist History* and *Freakonomics*, the transcripts are not available with Defendants' podcast streaming services so customers cannot use Defendants' platforms to read those transcripts.

79.     Mr. Munro is also interested in accessing podcasts to learn about a variety of other topics, including sports (especially hockey), politics, fitness (particularly yoga), and shows with a celebrity interview format. However, he has been deterred from seeking these podcasts out because he knows the none of Defendants provide transcripts for their podcasts.

80.     Mr. Munro would like to use the podcast streaming services to engage with podcasts on these and other topics but has not registered for an account or purchased a subscription with any Defendant because he knows they do not provide transcripts for their podcasts. Mr. Munro is particularly interested in accessing the SiriusXM original podcasts *Flutie Flakescast, The Ramsey Show*, *The Jess Cagle Podcast with Julia Cunningham,* and *Series A with Keith Rabois* and the Stitcher produced podcasts *Seizing Freedom*,  but no Defendant makes transcripts available for these or any other podcast available on its streaming service. Without transcripts, Mr. Munro does not have full and equal access to Defendants' podcast-streaming offerings. Mr. Munro would use each of Defendants' podcast streaming services if they provided

transcripts for their podcast content.  Mr. Munro would like to manage all his podcasts in as few platforms as possible, as hearing listeners do, but Defendants' failure to include even existing third-party transcripts in their services makes this impossible.

### f.   *Mei Nishimoto*

81.     Plaintiff Mei Nishimoto tutors children in ASL and other subjects through the internet. Ms. Nishimoto lives in Seattle, Washington and is deaf.

82.     Ms. Nishimoto is as a lifelong learner who enjoys educating herself about history, animals, languages, linguistics, and other subjects through articles, podcasts, and books.

83.     Ms. Nishimoto enjoys reading podcasts on a variety of subjects. She enjoys podcasts available from Slate, including *Lexicon Valley*, a linguistics podcast, and *Dear Prudence*, an advice podcast. She is able to engage with these podcasts because Slate provides transcripts for its podcasts on its website.

84.     Ms. Nishimoto also enjoys a variety of NPR podcasts, especially those focused on arts and culture. One of her favorites is *Code Switch*, a podcast for which NPR provides weekly transcripts. Although Slate and NPR independently provide transcripts for many of their podcasts, the transcripts are not available on Defendants' websites or mobile applications, so customers cannot use Defendants' platforms to read those transcripts.

85.     Ms. Nishimoto has a  daughter who is in Kindergarten. She would like to further her daughter's education by sharing a variety of scholastic podcasts with her. She learns about some of these educational podcasts from a Facebook group for children's education. However, because there are not transcripts available for these podcasts, Ms. Nishimoto is unable to screen them beforehand and make sure they are age appropriate and educational for her daughter. As a result, she is unable to access educational podcasts and share them with her daughter.

86.     Ms. Nishimoto would like to use Defendants' podcast streaming services to engage with podcasts on these and other topics, but has not registered for an account or purchased a subscription with any Defendant because she knows they do not provide transcripts for their podcasts. Ms. Nishimoto is particularly interested in accessing the SiriusXM original podcasts *Signal Boost, Have Kids They Said,* and *Song Exploder*, the Stitcher original podcast *Sporkful*, and the Stitcher produced podcast *Atlas Obscura*, but no Defendant makes transcripts available for these or any other podcast available on its streaming service. Without transcripts, Ms. Nishimoto does not have full and equal access to Defendants' podcast-streaming offerings. Ms. Nishimoto would use each of Defendants' podcast streaming services if they provided transcripts for their podcast content.   Ms. Nishimoto would like to manage all her podcasts in as few platforms as possible, as hearing listeners do, but Defendants' failure to include even existing third-party transcripts in their services makes this impossible.

### III.    The Technology Exists and Standards Require Defendants to Make Podcasts Accessible to People who are Deaf or Hard of Hearing

87.     Deaf and hard-of-hearing individuals seek to access audio content, including podcasts, through transcripts, which provide transliteration of the content as it occurs, sometimes including description of non-speech elements.

88.     The World Wide Web Consortium's ("W3C") Web Content Accessibility Guidelines ("WCAG") 2.1 provide useful standards for making web content accessible, including making content accessible to individuals who are deaf or hard of hearing.

89.     WCAG 2.1 Guideline 1.2.2 states that captions should be provided for prerecorded audio content in synchronized media, which includes podcasts.

90.     Providers of video streaming services, such as Hulu and Netflix, provide captions for most of their video content. Other podcast services such as Spotify, and other podcast producers, such as NPR and Slate, provide transcripts for their podcast content.

91.     ASR technology enables the recognition and translation of spoken language into text by computer. Transcripts then require a minimally burdensome human cleanup to ensure accuracy and labeling of speakers. Despite this readily available technology that would render their podcast streaming service accessible with some additional oversight to deaf and hard-of-hearing individuals, Defendants choose to exclude these potential users on the basis of disability by refusing to provide transcripts.

92.     Congress provided a clear national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by inaccessible services in places of public accommodation, such as Defendants' podcast streaming services.

93.     Despite this mandate, deaf and hard-of-hearing people do not have equal access to Defendants' podcast streaming services. By refusing to make its podcast streaming service accessible to deaf and hard-of-hearing persons, all Defendants violate basic equal access requirements under state and local law.

94.     On August 17, 2021, Named Plaintiffs notified each Defendant of the unlawful accessibility barriers described herein and requested that Defendants make a timely commitment to make their services accessible as required under current law.

95.     Defendants have failed to make such a commitment and their violations continue.

**FIRST CLAIM FOR RELIEF**

## Violations of Title III of the Americans with Disabilities Act
### (42 U.S.C. § 12182)

96.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

97.     Pursuant to Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

98.     Discrimination under Title III includes the denial of an opportunity for the person with a disability, such as those who are deaf or hard of hearing, to participate in programs or services or providing a service that is not as effective as what is provided to others. 42 U.S.C. § 12182(b)(1)(A)(i)–(iii).

99.     Discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

100.    Auxiliary aids and services include, among other things, "open and closed captioning, including real-time captioning; . . . or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 36.303(b).

101.    Defendants' podcast streaming services are each places of public accommodation as defined by the ADA because they are, or are part of, a "place of exhibition or entertainment,"

a "sales or rental establishment," a "service establishment," a "library," a "gallery," and/or a "place of public display or collection."  42 U.S.C. § 12181(7); 28 C.F.R. § 36.104.

102.    Defendant SiriusXM owns, operates, maintains, and/or leases the podcast streaming service which can be accessed at https://www.siriusxm.com/. Defendant Stitcher owns, operates, maintains, and/or leases the podcast streaming service which can be accessed at https://www.stitcher.com/. Defendant Pandora owns, operates, maintains, and/or leases the podcast streaming service which can be accessed at https://www.pandora.com/. Each Defendants, also owns, operates, maintains, and/or leases mobile applications for Apple and Android devices where they each offer their podcast-streaming service. These websites and mobile applications are services, facilities, privileges, advantages, or accommodations of Defendants.

103.    Plaintiffs Rebecca Alexander, Jazmine Jones, Dr. Amber Martin, James Munro, and Mei Nishimoto are individuals with a disability who are substantially limited in the major life activity of hearing.

104.    Plaintiff NAD is a nonprofit advocacy organization that has associational standing on the basis that its members are individuals with a disability who are substantially limited in the major life activity of hearing.

105.    Because each Defendant refuses to provide transcripts for their podcast streaming content on its platform, Plaintiffs and other members of the NAD are excluded from enjoyment of the services, facilities, privileges, advantages, or accommodations Defendants offers to their hearing customers.

106.   SiriusXM's failure to provide transcripts for its podcasts violates Title III's general prohibition of discrimination and the specific requirement that public accommodations provide auxiliary aids and services. 42 U.S.C. § 12182(a), (b)(2)(A)(iii).

107.   Stitcher's failure to provide transcripts for its podcasts violates Title III's general prohibition of discrimination and the specific requirement that public accommodations provide auxiliary aids and services. *Id*.

108.   Pandora's failure to provide transcripts for its podcasts violates Title III's general prohibition of discrimination and the specific requirement that public accommodations provide auxiliary aids and services. *Id*.

109.   As a result of each Defendant's failure to ensure that their websites and software applications are accessible to individuals who are deaf and hard of hearing, Plaintiffs, as well as individual members of NAD, are denied participation to each Defendant's podcast services and/or are provided an opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that which each Defendant affords hearing individuals.

110.   SiriusXM's podcast streaming service is not accessible to people who require transcripts, in violation of the ADA's prohibition of discrimination. 42 U.S.C. § 12182(a), (b)(1)(A)(i)–(ii).

111.   Stitcher's podcast streaming service is not accessible to people who require transcripts, in violation of the ADA's prohibition of discrimination. *Id*.

112.   Pandora's podcast streaming service is not accessible to people who require transcripts, in violation of the ADA's prohibition of discrimination. *Id*.

113.    An actual controversy has arisen and now exists between the parties in that
Plaintiffs contend, and are informed and believe that by refusing to provide captions or
transcripts for the podcasts available in its library, each Defendant fails to comply with
applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42
U.S.C. § 12181 *et seq.*

114.    Unless the Court enjoins Defendants from continuing to engage in these unlawful
practices, Plaintiffs will continue to suffer irreparable harm.

115.    As a result of Defendants' wrongful conduct, Plaintiffs are entitled to injunctive
relief pursuant to 42 U.S.C. § 12188 requiring Defendants to remedy the discrimination.

116.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
### (N.Y.C. ADMIN. CODE § 8-101 ET SEQ.)

117.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this
Complaint.

118.    The NYCHRL has a "uniquely remedial" purpose. The construction provision of
this law expressly provides that each section must be "construed liberally for the
accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether
federal or New York State civil and human rights laws, including those laws with provisions
worded comparably to provisions of this title, have been so construed." N.Y.C. Admin. Code §
8-130.

119.    Accordingly, Defendants' conduct is subject to a much stricter standard under the
NYCHRL than under federal law, and Defendants' liability under these provisions must be

determined separately and independently from their liability under the disability provisions of other statutes alleged in this Complaint.

120.    N.Y.C. Admin. Code § 8-107(4)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . . [b]ecause of any person's actual or perceived . . . disability . . . directly or indirectly . . . [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." Persons include all "natural persons, proprietorships, partnerships, associations, group associations, organizations, governmental bodies or agencies, corporations, [and] legal representatives." *See* N.Y.C. Admin. Code § 8-102.

121.    SiriusXM's podcast streaming service is a place of public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

122.    Stitcher's podcast streaming service is a place of public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

123.    Pandora's podcast streaming service is a place of public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

124.    All Defendants are persons within the meaning of N.Y.C. Administrative Code § 8-102(1) which defines "persons" to include "corporations."

125.    SiriusXM has its principal headquarters in New York City, it makes its services available throughout New York City, and some of the Plaintiffs are located within New York City.

126.     Stitcher has its principal headquarters in New York City, it makes its services available throughout New York City, and some of the Plaintiffs are located within New York City.

127.     Pandora makes its services available throughout New York City, and some of the Plaintiffs are located within New York City.

128.     Plaintiffs Rebecca Alexander, Jazmine Jones, Dr. Amber Martin, James Munro, and Mei Nishimoto are individuals with a disability within the definition of N.Y.C. Administrative Code § 8-102. Plaintiff NAD's membership includes individuals with a disability within the definition of N.Y.C. Administrative Code § 8-102 who live and/or work in New York City.

129.     Plaintiff Rebecca Alexander lives and works in New York City, and would consume Defendants' accommodations, advantages, services, facilities or privileges there, if they were accessible to her.

130.     SiriusXM violates N.Y.C. Administrative Code § 8-107(4)(a) by denying persons who are deaf and hard of hearing access to its podcast services which are otherwise available to the general public.

131.     Stitcher violates N.Y.C. Administrative Code § 8-107(4)(a) by denying persons who are deaf and hard of hearing access to its podcast services which are otherwise available to the general public.

132.     Pandora violates N.Y.C. Administrative Code § 8-107(4)(a) by denying persons who are deaf and hard of hearing access to its podcast services which are otherwise available to the general public.

133.    Each Defendant also violates N.Y.C. Admin. Code § 8-107(15). This provision mandates that "it is an unlawful discriminatory practice for any person prohibited by the provisions of this section from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." *See* NY.C. Admin. Code § 8-107(15). Because this provision applies to all entities that must comply with N.Y.C. Admin Code § 8-107, each Defendant is bound by it, and each has unlawfully denied Plaintiffs the reasonable accommodation of transcripts for the podcasts in its library.

134.    As a direct and proximate result of SiriusXM's violations of the NYCHRL, Plaintiffs have been injured as set forth herein.

135.    As a direct and proximate result of Stitcher's violations of the NYCHRL, Plaintiffs have been injured as set forth herein.

136.    As a direct and proximate result of Pandora's violations of the NYCHRL, Plaintiffs have been injured as set forth herein.

137.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendants are enjoined from further violations, Plaintiffs will continue to suffer injuries for which there is no adequate remedy at law. In particular, Plaintiffs will suffer irreparable harm in that they will continue to be discriminatorily excluded from accessing Defendants' podcast libraries on equal terms with everyone else. Plaintiffs are accordingly entitled to injunctive relief, compensatory damages, as well as civil penalties and fines pursuant to N.Y.C. Administrative Code § 8-120, and reasonable attorneys' fees and costs.

138.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CLAIM FOR RELIEF

**(Violation of New York State Human Rights Law, N.Y. Exec. Law,
Article 15 (Executive Law § 292 et seq.))**

139.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this

Complaint.

140.     New York Executive Law § 296(2)(a) states that it is an "an unlawful

discriminatory practice for any person, being the owner, lessee, proprietor, manager,

superintendent, agent or employee of any place of public accommodation . . . because of the . . .

disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such

person any of the accommodations, advantages, facilities or privileges thereof."

141.     New York Executive Law § 296(2)(c)(i) defines unlawful discriminatory

practices as including "a refusal to make reasonable modifications in policies, practices, or

procedures, when such modifications are necessary to afford facilities, privileges, advantages or

accommodations to individuals with disabilities."

142.     New York Executive Law § 296(2)(c)(ii) further provides that an unlawful

discriminatory practice shall also include "a refusal to take such steps as may be necessary to

ensure that no individual with a disability is excluded or denied services because of the absence

of auxiliary aids and services."

143.     Each Defendant operates a place of public accommodation under  N.Y. Exec.

Law § 292(9) which defines "place of public accommodation" broadly to include

"establishments dealing with goods or services of any kind."

144.     SiriusXM has its principal headquarters in New York State, it makes its services

available throughout New York State, and some of the Plaintiffs are located within New York

State.

145.    Stitcher has its principal headquarters in New York State, it makes its services available throughout New York State, and some of the Plaintiffs are located within New York State.

146.    Pandora makes its services available throughout New York State, and some of the Plaintiffs are located within New York State.

147.    Plaintiffs Rebecca Alexander, Jazmine Jones, Dr. Amber Martin, James Munro, and Mei Nishimoto are individuals with disabilities within the definition of N.Y. Exec. Law § 292(21). Plaintiff NAD's membership includes individuals with a disability within the definition of N.Y. Exec. Law § 292(21) who live and/or work in New York.

148.    Plaintiffs Rebecca Alexander, Jazmine Jones, Dr. Amber Martin, and James Munro live and reside in New York State and would consume Defendants' accommodations, advantages, facilities or privileges there, if those were accessible.

149.    Each Defendant discriminates and will continue to discriminate against Plaintiffs on the basis of disability by denying them the full and equal enjoyment of the services, facilities, privileges, advantages, accommodations and/or opportunities of their podcast services in violation of N.Y. Exec. Law § 296(2) et seq. and/or its implementing regulations.

150.    SiriusXM's failure to provide and integrate transcripts into its mobile application and website unlawfully denies Plaintiffs reasonable modifications and auxiliary aids and services which are necessary so that they may enjoy the advantages and accommodations of SiriusXM's services. *See* New York Exec. Law § 296(2)(c)(i)–(ii).

151.    Stitcher's failure to provide and integrate transcripts into its mobile application and website unlawfully denies Plaintiffs reasonable modifications and auxiliary aids and services

which are necessary so that they may enjoy the advantages and accommodations of Stitcher's services. *See Id.*

152.    Pandora's failure to provide and integrate transcripts into its mobile application and website unlawfully denies Plaintiffs reasonable modifications and auxiliary aids and services which are necessary so that they may enjoy the advantages and accommodations of Pandora's services. *See Id.*

153.    Defendants' conduct constitutes ongoing and continuous violations of the NYSHRL. Unless Defendants are enjoined from further violations, Plaintiffs will continue to suffer injuries for which there is no adequate remedy at law. In particular, Plaintiffs will suffer irreparable harm in that they will continue to be discriminatorily excluded from accessing Defendants' podcast libraries on equal terms with everyone else. Plaintiffs are accordingly entitled to injunctive relief, compensatory damages, and civil penalties and fines pursuant to New York Executive Law § 297(4)(c).

154.    As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiffs have been injured as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.    Declare that SiriusXM's failure to provide transcripts for its streaming podcast content violates the Americans with Disabilities Act 42 U.S.C. § 12181 et seq., the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*., and the New York State Human Rights Law, New York Exec. Law § 296 *et seq*.

2.    Declare that Stitcher's failure to provide transcripts for its streaming podcast content violates the Americans with Disabilities Act 42 U.S.C. § 12181 et seq., the New York

City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*., and the New York State Human Rights Law, New York Exec. Law § 296 *et seq*.

3.      Declare that Pandora's failure to provide transcripts for its streaming podcast content violates the Americans with Disabilities Act 42 U.S.C. § 12181 et seq., the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*., and the New York State Human Rights Law, New York Exec. Law § 296 *et seq*.

4.      Issue an injunction requiring all Defendants to provide transcripts for all of their podcast content and to affirmatively market the availability of transcripts to deaf and hard-of-hearing individuals.

5.      Issue an injunction requiring all Defendants to bring their website into compliance with the WCAG 2.1, 1.2.2 standard of digital accessibility and to provide an equivalent level of access for its software applications including but not limited to ensuring transcripts are available for all podcasts on their website and on their mobile applications;

6.      Award compensatory damages, costs, and reasonable attorneys' fees; and

7.      Award such other and further relief as the Court deems just and proper.

Dated:  December 9, 2021                  Respectfully submitted,


*Emily Seelenfreund*

_____
Emily Seelenfreund
Christina Brandt-Young

Disability Rights Advocates
655 Third Avenue, 14th Floor
New York, NY 10017


Leah Wiederhorn
Anna Bitencourt*

-35-

National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910

* motion for *pro hac vice* to be filed